73985. TAPLEY et al. v. VEAL et al.
(357 SE2d 268)

McMURRAY, Presiding Judge.

On April 17, 1986, appellees brought a petition for the adoption of A. L. T., a minor child. In the petition, appellees alleged that the natural mother of the child executed a surrender of parental rights and an acknowledgment of surrender pursuant to OCGA § 19-8-4. They also alleged that surrender or termination of the parental rights of the natural father was unnecessary because he abandoned the child and failed significantly, for a period of one year or longer immediately preceding the filing of the petition, to provide for the care and support of the child as required by law. The petition was served upon the natural father on May 16, 1986. He did not file a written response to the petition.

On July 31, 1986, a hearing was held to determine the propriety of the adoption. The natural parents were present and they contested the adoption. Nevertheless, the superior court granted the petition for adoption. It concluded that the natural mother voluntarily surrendered her parental rights and that she failed to revoke that surrender within 10 days; that surrender or termination of the natural father's parental rights was not required because he "failed significantly to provide for the care and support of the child, both financial and emotional, for a period in excess of one year immediately [prior to] the filing of the petition for adoption"; that appellees were willing and able to provide a safe and stable environment for the child; and that the best interests of the child would be served by granting the adoption. The natural parents appealed.

The following evidence was presented in the superior court: During the course of their 10-year marriage, appellants experienced financial hardship. On many occasions, they were unable to pay their rent or utility bills. Appellants were constantly evicted and they moved often. The father, a printer, was out of work frequently.

During a period of several months in late 1984, appellants left their four children in Macon with their maternal grandmother while the father, accompanied by the mother, tried to find a job in various cities. The grandmother was unable to watch all of the children herself because she worked. Accordingly, she solicited the help of others. One couple took care of appellants' youngest child, A. L. T. Appellants did not send money to provide for the support of the children during this period. On Thanksgiving Day, appellants went through Macon on their sojourn but they did not take time to visit with A. L. T.

After a few months, the father found a job and appellants' family was reunited. The family remained intact until November 1985. At that time, the father was incarcerated after he pleaded guilty to "purse snatching."

The father was given first offender treatment and was able to keep his job under a work-release program. Pursuant to the program, the father was let out of jail each day to go to work. During this period of time, the father saw his children frequently because he often returned home to get his clothes. The mother met the father each payday and accompanied him to the bank. After the bank cashed the father's pay check, he gave a certain amount to his wife. (The father testified he only kept "spending money" and the mother was given the balance of each check. Mrs. Veal, one of the appellees, testified that the mother informed her she was only given a small sum by the father each week.)

In March of 1986, while the father was still in jail, the mother decided that she would have to divorce him, that it would be too difficult to raise all four children alone, and that, therefore, it would be best to give up the two youngest children for adoption. The maternal grandmother thought that appellees might be interested in adopting A. L. T. and they were. They took custody of the child on March 14, 1986. At that time, the mother executed the surrender of parental rights. Shortly thereafter, this petition for adoption was filed by appellees.

The mother changed her mind about the divorce and the adoption of her children. She informed appellees that she wanted A. L. T. back. Appellees pressed on. The father never consented to the adoption of A. L. T. He informed the investigating caseworker that he opposed the adoption. Yet, he did not provide financial support for the child or visit the child during the pendency of the adoption proceeding. *Held*:

1. Pursuant to OCGA § 19-8-6 (a), a person may seek the adoption of a child without first obtaining a surrender or termination of parental rights if the child has been abandoned by the natural parent. Under OCGA § 19-8-6 (b), a close relative of either natural parent

may seek the adoption of a child without first obtaining a surrender or termination of parental rights if the natural parent has failed significantly for one year or longer immediately prior to the filing of the petition for adoption to communicate or to make a bona fide attempt to communicate with the child or to provide care and support for the child. See generally *In re A. J. A.*, 164 Ga. App. 210, 211 (296 SE2d 103).

In the case sub judice, neither appellee is a close relative of the natural parents. A surrender of parental rights was obtained from the natural mother of the child. But the natural father refused to consent to the adoption. Accordingly, it was incumbent upon the superior court to weigh the evidence under OCGA § 19-8-6 (a). In other words, the court should have determined whether the natural father *abandoned* the minor child. This the court failed to do. The court merely determined that the natural father significantly failed to provide for the care and support of the child for a period exceeding one year. Such a determination is not the equivalent of a finding of abandonment. See *Crumb v. Gordon*, 157 Ga. App. 839 (278 SE2d 725). It follows that the superior court erred in granting the petition for adoption. *Spires v. Bittick*, 171 Ga. App. 914, 917 (321 SE2d 407). This case must be remanded for further consideration. *In re J. S. J.*, 180 Ga. App. 873 (350 SE2d 843).

*In re A. J. A.*, 164 Ga. App. 210, supra, does not require a different result. In that case the superior court made a specific finding of abandonment. No such finding was made in the case sub judice.

2. In view of our ruling hereinabove, we need not consider the remaining enumerations of error.

*Judgment reversed and case remanded for proceedings not inconsistent with this opinion. Sognier, J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur in all that is said except that I would consider the discussion regarding insufficient evidence of abandonment to be merely dicta. We have ruled, rightly, that the superior court applied the wrong statutory criteria. Having so concluded, reversal is in order. Since the court never weighed and ruled on the evidence of abandonment, I do not believe it is incumbent on this reviewing court to do so in the first instance.

DECIDED APRIL 17, 1987 —
REHEARING DENIED MAY 18, 1987.

*James M. Wootan*, for appellants.

*Philip T. Raymond III*, for appellees.